K–91, INC., Appellant,

v.

**GERSHWIN PUBLISHING CORPORA-TION et al., Appellees.**

**No. 20074.**

United States Court of Appeals
Ninth Circuit.

Jan. 13, 1967.

Rehearing Denied Feb. 16, 1967.

Ronald A. Murphy, Seattle, Wash., for appellant.

J. Paul Coie, of Holman, Marion, Perkins, Coie & Stone, Seattle, Wash., Simon H. Rifkind, Jay H. Topkis, Allan Blumstein, of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for appellees.

Before BARNES, KOELSCH and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal in a civil nonjury case from a judgment in favor of the appellees, the owners of copyrights on various musical compositions. Appellant, a radio station operator in the State of Washington, played these musical compositions on the air without the permission or consent of the appellees. Appellees filed a complaint, under 17 U.S.C. §§ 1, 101, seeking damages for and an injunction against such infringement. Appellees prevailed, and the court below entered judgment awarding them $1,000 damages and enjoining further infringement. The trial court had jurisdiction under 28 U.S.C. §§ 1337, 1338, and we have jurisdiction of the appeal under 28 U.S.C. § 1291.

Appellant, both in the trial below and on oral argument before this court, admitted the expropriation and infringement of appellees' copyrights, but claimed appellees were misusing their copyrights in violation of public policy generally, and particularly in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Therefore, appellant contended, no relief should be granted because appellees had come into court with unclean hands. It was charged that appellees had, between themselves and in conjunction with the American Society of Composers, Authors and Publishers (hereinafter "ASCAP"), conspired to fix prices and to engage in other unlawful practices, in violation of (a) the Sherman and Clayton Acts, and (b) the laws of the State of Washington, particularly R.C.W. § 19.24.020. Appellant also counterclaimed seeking treble damages and an injunction against further misuse of the copyrights. Fed.R.Civ.P. 13(a), 15 U.S.C. §§ 15, 26. This relief was denied.

This case cannot be understood without an analysis of the role of ASCAP. ASCAP is an unincorporated membership association comprising over 8000 author, composer and publisher members who own copyrights on various separate musical compositions. (Finding of Fact No. 16, C.T. p. 196.) ASCAP functions as a licensing agency for the composers, authors and publishers. When someone in the professional entertainment field wants to perform a copyrighted piece, they merely secure a license from ASCAP rather than seeking out the individual composer, author and/or publisher whose work they want to perform. ASCAP charges a fee or royalty for the license, and its members periodically receive royalty distributions from ASCAP.

In the 1940's the Justice Department became concerned over the operations of ASCAP and its overwhelming position in the entertainment field. Suit was brought under the antitrust laws to prevent restraints of trade by ASCAP, which resulted in the Amended Final Judgment of March 14, 1950, in the United States District Court for the

Southern District of New York in Civil Case No. 13-95, 1960 Trade Cas. ¶ 69,612 (S.D.N.Y.). There is no claim in this case that ASCAP and appellees, ASCAP members, have not conformed to the terms of the Amended Final Judgment.

We note three specific requirements of the Amended Final Judgment:

(1) The rights acquired by ASCAP to license the public performance of copyrighted compositions must be nonexclusive;

(2) The license fees or royalties must be reasonable, and if there is a dispute as to the reasonableness of the proposed fee, the fee will be set by the United States District Court for the Southern District of New York; and

(3) A license must be granted on the same terms and conditions to all applicants similarly situated.

Basically, appellant challenges the lower court result in three aspects: (a) failure to make certain findings of fact; (b) failure to find violations of the federal antitrust laws; and (c) failures to find violations of the Washington State antitrust laws. We treat them in that order.

## I. *Failures to Make Certain Findings*

Appellant lists eight examples of the court's failure to find. Among them are the facts that: the ASCAP repertory (inventory of copyrighted compositions) includes more than a million musical compositions; that ASCAP is managed by a Board of Directors which sets the fees for its licenses; that music is a necessity to the broadcasting industry within the State of Washington and throughout the United States; and that each musical copyright is unique. We think that in view of the detailed findings of fact and conclusions of law made by the trier of fact (C.T. pp. 193-217), these eight examples (four of which we have cited) of the failure to make specific findings, are without enough substantial merit to constitute reversible error.

Instead of finding that one million musical compositions were controlled by ASCAP, the court found that ASCAP is made up of over 8000 members (Finding of Fact No. 16, C.T. p. 196); is but one of three music licensing organizations in the United States, which together license substantially all of the copyrighted musical works in the United States (Finding of Fact No. 18, C.T. pp. 196-97); and that fifty per cent of all performances of copyrighted music by broadcasting stations are performances of compositions which ASCAP members have created (Ibid.) That "music is a necessity to the broadcasting industry" paraphrases the trial judge's remark that "music is an essential part of the operation of a radio station." (R.T. p. 6) While the statement may not be completely true in this modern age of "two-way radio" or "conversation programs", it has been only too evident to listeners for many years. We can likewise assume that "each musical copyright is unique", though not with the same uniqueness as is implied in a patented article. Cf. Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99 (2d Cir. 1951).

As to each of the stipulated facts which appellant claims should have been specifically found as facts by the trial court, we find they were either immaterial or redundant in light of the findings made. (The trial judge, on motion for a new trial, found they were "repetitious or irrelevant." (R.T. p. 251.)) There was no error in this regard.

## II. *ASCAP and the Federal Antitrust Laws*

This litigation skirts a very perplexing problem long existing in federal antitrust law, to wit, the extent to which relief, if any, should be granted against a business for conduct which is permissible under the terms of a judicially approved consent decree. Put another way, the question is whether a consent decree by its terms can immunize against further prosecution for violation of the antitrust laws. Fortunately, however, the present case does not call for an answer to this question.

At the beginning of this litigation there were three possible results for ap-

**4**

pellant's counterclaim based on federal antitrust violations. The court could have found: (1) that there were in fact no violations of the federal antitrust laws; (2) that federal antitrust laws were violated, but since the conduct of the appellees conformed to the earlier consent decree no remedy was available; or (3) that the federal antitrust laws were violated and that the earlier consent decree offered no protection, granting relief to the appellant on its counterclaim. While either of the last two possibilities would have squarely raised the question of immunity deriving from the earlier consent decree, it was the first possibility which actually occurred. Since the trial court found no violations of the federal antitrust laws,[1] we do not reach the question of whether activities which would otherwise be a violation of the antitrust laws could be rendered immune because consistent with the terms of the consent decree.

 We agree with the trial court that the activities of ASCAP do not constitute a combination in restraint of trade or a monopoly within the meaning of the Sherman Act. ASCAP is certainly a combination, but not every combination is a combination in restraint of trade or a monopoly. ASCAP cannot be accused of fixing prices because every applicant to ASCAP has a right under the consent decree to invoke the authority of the United States District Court for the Southern District of New York to fix a reasonable fee whenever the applicant believes that the price proposed by ASCAP is unreasonable, and ASCAP has the burden of proving the price reasonable. In other words, so long as ASCAP complies with the decree, it is not the price fixing authority. We cannot agree with the contention that the danger of unreasonable activity that might arise from ASCAP's activities makes everything that it does a violation of the antitrust laws, when those of its potential activities that might have this effect are prohibited by the decree. No

contention is here made that ASCAP's actual activities do not comply with the decree. In short, we think that as a potential combination in restraint of trade, ASCAP has been "disinfected" by the decree.

 There is an additional reason why the activities disclosed by this record do not violate the antitrust laws. ASCAP's licensing authority is not exclusive. The right of the individual composer, author or publisher to make his own arrangements with prospective licensees, and the right of such prospective licensees to seek individual arrangements, are fully preserved. There was no error in the trial court's finding that appellees have not violated the federal antitrust laws.

### III. ASCAP and the Washington State Antitrust Laws

 The State of Washington has certain antitrust laws relating to copyrights. Copyrighted music and drama are protected by R.C.W. § 19.24.010 (1957), but R.C.W. § 19.24.020 (1957) makes unlawful certain combinations of copyright owners. The latter section provides in part:

"It shall be unlawful for two or more persons holding or claiming separate copyrighted works under the copyright laws of the United States, either within or without the state, to band together, or to pool their interests for the purpose of fixing the prices on the use of said copyrighted works, or to pool their separate interests or to conspire, federate, or join together, for the purpose of collecting fees in this state, or to issue blanket licenses in this state, for the right to commercially use or perform publicly their separate copyrighted works: *Provided, however,* Such persons may join together if they issue licenses on rates assessed on a per piece system of usage: \* \* \*."

When copyrights are pooled, R.C.W. § 19.24.020 (1957) requires a complete detailed list of the works to be filed each

---

1. Conclusions of Law Nos. 15 and 16, C.T. p. 214.

year, together with a list of prices charged or demanded, with the Washington Secretary of State. R.C.W. § 19.24.-055 (1957) requires such a list if the music is used commercially within the state, or originates or is heard therein.

Washington frankly states the purpose of its requirements in R.C.W. § 19.24.-060 (1957).[2] There are also special purpose statutes, defining "doing business" with respect to licensing pools such as ASCAP (R.C.W. § 19.24.100 (1957)); providing for appointment of receivers and the escheat of property for persons who refuse to abide by the state copyright laws (R.C.W. § 19.24.140 (1957)); and providing that special appearances in copyright suits are to be deemed general appearances (R.C.W. § 19.24.280 (1957)).

The court below, in findings of fact unchallenged here, noted the previous concern over the application of the Washington statute.

"38. In 1958, certain broadcasters in the State of Washington stopped paying fees to ASCAP under existing license agreements on the alleged ground that payment of such license fees would violate Ch. 19.24, R.C.W.

"39. The license agreements referred to in Finding 38 expired on December 31, 1958.

"40. In 1959, a group of broadcasters, including eleven broadcasters located in the State of Washington, commenced a proceeding in the United States District Court for the Southern District of New York under Section IX of the Amended Final Judgment for determination of reasonable fees for licenses to be effective as of January 1, 1959.

"41. In that proceeding, the Court ruled that, in the circumstances presented, ASCAP would not be directed to issue licenses to any petitioning broadcasters in the State of Washington.

"42. Thereafter, and until November 20, 1959, ASCAP did not offer licenses to broadcasters in the State of Washington.

"43. On November 20, 1959, the owners of 61 Washington radio stations filed a petition in the United States District Court for the Southern District of New York asking that Court to issue an order

'(a) directing ASCAP to grant to petitioners and others similarly situated who may join herein, licenses for the right of public performance of compositions in the ASCAP repertory by the radio and television stations operated by them within the State of Washington;

'(b) determining and establishing the terms and conditions of such licenses.'

"44. At the request and with the consent of the petitioners, the Court (Ryan, C. J.) entered an order on November 20, 1959 directing ASCAP to issue licenses to the petitioners in one of two specified forms for the period January 1, 1959 through December 31, 1963. The Court ruled:

'6. Taking into consideration the provisions of the Amended Final Judgment herein, the regulation of the activities of the respondent thereunder and the scope of its activities pursuant thereto, and giving due regard to the enactment of Revised Code of Washington, C. 19.-24—Laws of 1937, C. 218, the li-

2. "The provisions of this chapter, and the administration thereof, shall at all times effectuate the enforcement, the true intent, and meaning of the United States copyright laws in order to prevent abuses from being practiced within this state * * * in the furtherance of any systematic campaign or scheme designed to illegally fix prices for the commercial use of copyrighted works in this state through the use of extortionate means and terrorizing practices based on threats of suits, and an abuse of both state and federal process, all of which are declared to be in violation of this chapter and of the state Constitution; * * *" R.C.W. § 19.24.060 (1957).

censes which the Society is hereby directed to issue may lawfully be entered into between respondent and petitioners, and respondent is hereby directed to enter into such license agreements with each of the petitioners.

'7. The provisions in said agreements for the disposition of claims for the period prior to June 1, 1959 are reasonable and do not discriminate against other users in the State of Washington or other states.'

"45. The two specified license forms were the so-called 'blanket' and 'per program' radio licenses. Both licenses grant the licensee the right to perform whatever ASCAP music he desires, whenever he desires. Under the blanket license, the fee charged is 2.125% of the licensee's over-all revenues from sale of time on the air, after extensive deductions. Under the per program license, the licensee pays a higher percentage, but the fee is based only on the revenues from programs on which compositions in the ASCAP repertory are performed." (C.T. pp. 204–205.)

Appellant seems to feel that since ASCAP was authorized to issue, in addition to other kinds, "blanket" licenses which might arguably be contrary to R.C.W. § 19.24.020 (1957), it has made out a valid defense to the infringement action. If such is its approach, it is mistaken. Appellant has offered no evidence that it applied for a license and could obtain only a blanket license. There is no evidence in the record that appellees did not at all times stand ready to negotiate licenses which would be lawful in the State of Washington.

On the contrary, plaintiffs (appellees here) introduced into evidence (P. Ex. 9) a copy of a letter dated August 23, 1948, from the Washington Attorney General to the Secretary of State, stating ASCAP had, by its filing[3] on April 20, 1948, demonstrated:

(a) "it does issue licenses on rates assessed on a per piece system of usage * * *,"

(b) "it does not issue licenses at a rate in excess of any per piece system in operation in any other state, * * *,"

(c) it had filed "a complete list of their copyrighted works or compositions,"

(d) it had filed "a list completely detail[ing] prices charged and demanded," and

(e) it had listed the date of each copyright, and name of the author, the names of the publishers and the dates of assignment to ASCAP.

The Attorney General concluded there had been "a reasonable compliance with the provisions of Chapter 218[4];" and that "the defects which the Supreme Court pointed out[5] have now been cured." (P.Ex. 9, p. 9. Cf. Finding of Fact No. 53, C.T. p. 207.)

The trial court found that no public official of the State of Washington had at any time requested ASCAP to make any changes in either the form or substance of its filings. (Finding of Fact No. 52, C.T. p. 207.)

Thus it seems clear that at all times, at least since the November 20, 1959 rate fixing hearing in the New York district court (in which eleven State of Washington broadcasters participated) appellant could have obtained a license from ASCAP, valid under Washington

---

3. Appellees assert that they have, since at least 1961, and each year prior to the filing of the suit on January 16, 1963, filed with the Secretary of State of Washington State a catalog of their copyrighted musical compositions, together with forms of licenses available to all users, and fees therefor. (P.Exs. 1, 5, 6; D. Exs. A–7, A–8, A–8a.)

4. Laws of 1937; Rem.Rev.Stat. 3830–1 et seq., the forerunner of R.C.W. § 19.24.020 (1957).

5. Taylor v. State, 129 Wash.Dec. 591 (1948).

law so far as this record before us discloses, to perform publicly for profit any musical composition in ASCAP's repertory, subject only to its obligation to pay a reasonable license fee, as fixed by the New York district court.

As appellees point out, appellant had five options open to it. Four of them were:

(1) Appellant could have obtained a blanket license and along with it the right to play as much or as little, as frequently or as rarely as it desired, any of the compositions in the ASCAP repertory.

(2) Appellant could have obtained a per program license which would have required it to pay a license fee only for those programs in which appellant broadcast music from the ASCAP repertory.

(3) It could have undertaken to deal with ASCAP members directly.

(4) Appellant could have refrained from giving public performances for profit of music in the ASCAP repertory.

Instead, appellant chose the fifth option. Appellant never obtained any license. It never sought to deal with anyone. It continued its unconscionable conduct in unlawfully appropriating appellees' property without cause and without justification.

There seems little purpose in going into detail to discuss further the reason why the court's conclusions of law are not only not erroneous,[6] but are fully supported by the findings of fact, which in turn, find support in the evidence.

We find (1) all filing requirements of the State of Washington have been met; (2) no "extortionate means" nor "terrorizing practices" are found in the bringing of law suits against infringing broadcasters; (3) R.C.W. § 19.24.020 prohibiting blanket licenses must be read with the proviso contained therein, and raises serious doubt if an absolute prohibition against all blanket licenses was intended; (4) there was no proof of any refusal at any time by any individual appellee to grant, or to negotiate, for a separate license (in fact, there exists no proof that there was ever an attempt to obtain such a license); and (5) any would-be user has the right to have the United States District Court for the Southern District of New York fix what is reasonable as a license fee.

In Conclusion II, the trial judge found: "The ASCAP per program license may reasonably be regarded as assessing rates 'on a per piece system of usage,' as the Washington statute uses that phrase." (C.T. p. 214.)

We need not specifically approve or disapprove of the trial court's interpretation of the Washington statute. If the per program license were interpreted as a blanket license and it was found that R.C.W. § 19.24.020 (1957) permits only licenses of specific individual compositions, ASCAP members nevertheless retain the absolute right to license their individual compositions, and the trial court found:

"Plaintiffs have at all times in the last ten years been ready to negotiate with any broadcaster in the State of Washington for a license to perform any of plaintiffs' copyrighted musical compositions on any mutually agreeable basis, including 'rates assessed on a per piece system of usage.' In the last ten years, no broadcaster in the State of Washington has requested such a license from any plaintiff. No defendant has ever made any attempt to contact any plaintiff individually for the purpose of obtaining licenses to play any of plaintiffs' compositions on a 'per piece' or any other basis." (Finding of Fact No. 50, C.T. p. 206.)

"In the last ten years, ASCAP has not received any request from any broadcaster in the State of Washington and any ASCAP member in interest for the issuance of a license to perform one or more specified composi-

---

6. Conclusions of Law 5 to 14, inclusive, as to Washington law, and 15 to 18, inclusive, as to federal law.

**8**

tions." (Finding of Fact No. 51, C.T. p. 206.)

We do not find it necessary to discuss the other points raised in the respective briefs.

We find the trial court's findings and conclusions were properly made, and support the judgment in favor of appellees. That judgment is correct, and is affirmed.