**Sonia SCHUMANN, et al., Plaintiffs,**

**v.**

**ALBUQUERQUE CORP., Rio Broadcasting Co., Inc., Bravo Broadcasting Co. and Edward L. Gomez, Defendants.**

Civ. No. 86–229 HB.

United States District Court,
D. New Mexico.

June 18, 1987.

Rex D. Throckmorton, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuqueque, N.M., for plaintiffs.

Ronald W. Henkel, Roehl & Henkel, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BRATTON, Senior District Judge.

This matter comes before the court on plaintiffs' motion for partial summary judgment. The court having considered the motion, reviewed the record and having been apprised of the applicable authorities, concludes that the motion is well taken and should be granted.

This is an action for infringement of plaintiffs' copyrights in nine musical compositions and is brought under the Federal Copyrights Act, 17 U.S.C. § 101 et seq. Plaintiffs allege that the musical compositions at issue were broadcast without authorization over the defendants' respective radio stations KABQ in Albuquerque, New Mexico, KIRT in Mission, Texas, and KQXX–FM in McAllen, Texas.

■ A motion for summary judgment may be properly granted only in cases where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir.1975). In ruling upon a motion for summary judgment the court must view the record in the light most favorable to the party opposing the motion and must consider factual inferences in the light most favorable to the existence of triable issues. *Exnicious v. United States*, 563 F.2d 418 (10th Cir.1977). The burden on a party moving for summary judgment may be discharged by offering evidence that negates an element of the nonmoving party's claim or defense or by showing that there is an absence of evidence to support the nonmoving party's claim or defense. *Celotex*, 477 U.S. at ——–——, 106 S.Ct. at 2552–55. Should the nonmoving party then fail to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment in favor of the moving party is mandated. *Id.* at ——, 106 S.Ct. at 2550.

■ In order to establish liability for infringement of copyright in a musical composition, plaintiffs must prove the following:

1. The originality and authorship of the compositions involved;

2. Compliance with all formalities required to secure a copyright under Title 17, United States Code;

3. That they are the proprietors of the copyrights of the compositions involved in this action;

4. That the compositions were performed publicly for profit; and

5. That the defendants had not received permission from any of the claimants or their representatives for such performance. *Blendingwell Music, Inc. v. Moor-Law, Inc.*, 612 F.Supp. 474, 479–80 (D.Del.1985); *Fourth Floor Music, Inc. v. Der Place, Inc.*, 572 F.Supp. 41, 43 (D.Neb.1983); *Chess Music, Inc. v. Tadych*, 467 F.Supp. 819, 821 (E.D.Wis.1979).

Finding the existence of the first three elements is relatively easy in the present case. Plaintiffs have made out a *prima facie* case as to these element by submitting certified copies of copyright registration certificates, renewal certificates and subsequent assignment registrations for each composition. *See Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F.Supp. 357, 362–63 (D.Del.1980); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912–13 (D.Conn.1980); *Fourth Floor Music, supra* at 43. The defendants have failed to produce any evidence to the contrary on these points.

■ Thus, originality, authorship, compliance with statutory formalities, and ownership must all be taken as proved in the nine compositions listed in the complaint.[1] As proprietors of the copyrights in the musical compositions involved in this action, plaintiffs have the exclusive right to perform their copyrighted works publicly.

---

1. Defendant notes that as to the song "Vaya Con Dios", there are only renewals of copyright by two of the four joint composers and assignments from only those two composers to plaintiffs in this action. However, the assignments render plaintiffs a holder of an undivided interest in the whole *See Pye v. Mitchell,* 574 F.2d 476 (9th Cir.1978) and give plaintiffs standing to bring this action under 17 U.S.C. § 501(b) regardless of the ownership of the two other composers.

With the exception of "Jurame a/k/a Promise Love," defendants do not contest that all the works or portions thereof were broadcast by their radio stations, which is a form of public performance. Nor do defendants contest the fact that they operate those commercial radio stations for economic gain and that the broadcasts in question were done for economic gain.

■ With respect to "Jurame a/k/a Promise Love," defendants have submitted evidence that they broadcasted a medley of songs by Lupita D'ealessio not the single song "Jurame." Gomez Affidavit ¶ 8. However, plaintiffs have shown that there is no genuine issue of material fact that the medley as broadcast contained substantial portions of the song "Jurame." Ayden Reply Affidavit. There is no evidence whether permission was obtained to record the medley incorporating parts of "Jurame." However, this fact is irrelevant since even if there was permission to record, broadcasting is an additional performance which requires separate permission from recording. Thus there is no genuine issue of material fact as to element four.

As to authorization of use, without plaintiffs' permission copyrighted musical works may not be performed publicly by defendants without infringing the plaintiffs' copyright. In this instance, plaintiffs are all members of the American Society of Composers, Authors and Publishers ("ASCAP"), to which they have granted a nonexclusive right to license nondramatic public performances of their copyrighted musical compositions. Defendant Gomez testified in his deposition that he did not have plaintiffs' permission to broadcast their compositions. However, defendants contend that defendants each had a valid and binding contract with ASCAP allowing defendants permission to play the songs. The uncontroverted evidence shows that on December 1, 1983, ASCAP and the three corporate defendants in this case entered into licensing agreements. Defendants' Exhibits C, D and E. Under the terms of those agreements, the licenses were granted for a period of time commencing December 1, 1983 and ending on the last day of the third full calendar month following the date of a written notice of termination given at any time by either party. However, the agreements also entitled ASCAP to promptly terminate the licenses upon thirty days notice of a breach or default. Notices of immediate license termination were sent to the corporate defendants on April 12, 1985, Defendants' Exhibits F, G and H, pursuant to the default termination provision of the agreements.

■ Defendants do not contest the fact that they were in default under the agreements or that the terminations were proper; and defendants' contention that there is a fact question regarding when the agreements terminated is not well taken. The language of the agreements is clear that the licenses could be terminated promptly after 30 days notice of default. The termination notices are likewise clear that notice of default was given more than 30 days previously and that the licenses were terminated immediately. The affidavits submitted by plaintiffs substantiate that the broadcasting of the works in question all occurred well after April 12, 1985. Ayden Affidavit ¶¶ 5, 6, 7 & 8; Park Affidavit; Bustos Affidavit.

■ Defendants raise a second issue of authorization with respect to the two songs, "Spanish Flea" and "Los Hombres No Deben Llorar a/k/a Nova Flor, Nueva Flor and Love Me Like a Stranger." These two works were broadcasts of live performances. Defendants contend that there is no evidence that the performers did not have permission to perform the songs. However, the performers' permission is irrelevant as broadcasting is an additional performance which requires separate permission.

[P]ublic performance and public display cover not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public. Thus, for example: a singer is performing when he or she sings a song; a broadcasting network is performing when it transmits his or her performance

(whether simultaneously or from records)....

H.Rep. No. 1476, 94th Cong., 2d Sess. 63, (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5676. Thus there is no genuine issue of material fact regarding the unauthorized nature of defendants' broadcast.

Defendants raise two defenses in their response to plaintiffs' motion. The first defense is that their broadcast of three songs, "Pennsylvania 6–5000," "Spanish Flea" and "Los Hombres No Deben Llorar a/k/a Nova Flor, Nueva Flor and Love Me Like a Stranger," were privileged under the doctrine of fair use. The fair use doctrine is a limitation on plaintiffs' exclusive rights to perform. 17 U.S.C. § 107. Four factors which are codified in § 107 have been historically utilized by the courts to determine fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

■ The facts presented by defendants do not raise a question of fair use of the song "Pennsylvania 6–5000." The fact that the song might have been used as background to a community calendar does not render its performance fair use under § 107. The use is not one of those traditionally thought of as falling within the fair use exception such as criticism, comment, news reporting, teaching, scholarship or research.

■ The performance of "Spanish Flea" and "Los Hombres No Deben Llorar a/k/a Nova Flor, Nueva Flor and Love Me Like a Stranger" are more problematic. Defendants have submitted evidence that these two songs were played by a band named Cuarteto Nuevo Mexicano at the Fiestas de Albuquerque on April 27, 1985 at the Civil Plaza in Albuquerque. Radio Station KABQ was doing remote spots covering the event on that date. Defendants contend that the coverage, including broadcasting some of the songs played by the band, constituted news coverage, and thus fair use.

In a similar case, the District Court for the Southern District of New York found that copyrighted music, fortuitously played during a parade which was part of a news broadcast was fair use on the news broadcaster's part. *Italian Book Corp v. American Broadcasting Companies, Inc.* 458 F.Supp. 65 (S.D.N.Y.1978). The present case is distinguishable. In the instant case the entire songs were broadcast and the broadcast was not a news show. Although defendants characterize the broadcast as public service, the fact remains that the station is a commercial station and the remote broadcast had entertainment value. As such the broadcasting of the songs was in direct competition with the proprietors' right to exclusive performance. The facts, which are undisputed, sustain a finding that the broadcasting of these particular songs did not constitute fair use. Thus summary judgment as to liability is proper as to these two songs.

■ Defendants also assert as a defense that plaintiffs' actions to compel defendants to accept blanket licenses unrelated to use is not reasonable and justified and is an actionable restraint of trade under the antitrust laws. A challenge similar to the one made here has been rejected by the Ninth Circuit. *K–91, Inc. v. Gershwin Publishing Corp.,* 372 F.2d 1 (9th Cir.1967), *cert denied,* 389 U.S. 1045, 88 S.Ct. 761, 19 L.Ed.2d 838 (1968). One of the grounds for dismissing the antitrust claims was that ASCAP's licensing authority is not exclusive.

There is an additional reason why the activities disclosed by this record do not violate the antitrust laws. ASCAP's licensing authority is not exclusive. The right of the individual composer, author or publisher to make his own arrangements with prospective licensees, and the right of such prospective licensees to

seek individual arrangements, are fully preserved. There was no error in the trial court's finding that appellees have not violated the federal antitrust laws. *Id.* at 4. The Supreme Court has held that the blanket licensing practices of ASCAP are not *per se* violative of the Sherman Act and must be analyzed under the rule of reason. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

Following the Supreme Court decision, the Second Circuit has had occasion to look at ASCAP's licensing practices in two different settings. In determining whether trade was unreasonably restrained in a particular instance, the Second Circuit stated that pooling of rights such as with ASCAP does not restrain trade if "an alternative opportunity to acquire individual rights is realistically available." *Buffalo Broadcasting Co. v. American Society of Composers, Authors and Publishers*, 744 F.2d 917, 925 (2d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); *Columbia Broadcasting System, Inc. v. American Society of Composers, Authors and Publishers*, 620 F.2d 930, 935–36 (2d Cir.1980), *cert denied*, 450 U.S. 970, 101 S.Ct. 1491, 67 L.Ed.2d 621 (1981) (on remand from 441 U.S. 1). In an concurring opinion, Judge Winter stated that

> so long as composers or producers have no horizontal agreement among themselves to refrain from source or direct licensing and there is no other artificial barrier, such as a statute, to their use, a non-exclusive blanket license cannot restrain competition. In those circumstances, it is simply one alternative competing on the basis of price and services with others.

*Buffalo Broadcasting, supra* at 934.

In the instant case, defendants have not made any showing that obtaining permission from the individual copyright holders is as a practical matter not a real alternative to the blanket license. The fact that defendants are Spanish stations which would play very little ASCAP music does not change the basic analysis. If anything, the fact that defendants play very little ASCAP music should make it more feasible for them to obtain permission to broadcast individual compositions from the copyright holders than for an organization which broadcasts large quantities of ASCAP material as was the case in the two Second Circuit cases.[2] Defendants' reliance on a defense of antitrust violations is unavailing in this instance.

▮▮▮▮▮ Plaintiffs seek to hold Gomez personally liable for the acts of the corporate defendants. Gomez is vice president, chief executive officer and controlling stockholder of all three defendant corporations. He is also general manager of all three radio stations. Under the undisputed facts of record, Gomez is both responsible for, and has a direct financial stake in the operation of the stations; and he took no steps to obtain permission to perform plaintiffs' songs or any reasonable steps to to take precautions or to police against the infringing activity. Knowledge of the infringing activity is not necessary to find liability. *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 913 (D.Conn.1980). Liability on a controlling individual is premised on the belief that such person "is in a position to police the conduct of the 'primary' infringer." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 309 (2d Cir.1963); *Fourth Floor Music, Inc. v. Der Place, Inc.*, 572 F.Supp. 41, 44 (D.Neb. 1983). In this case, Gomez had a great deal of control over the operation of the stations, even though he did not personally determine the programming, and he had a substantial financial interest. Under the undisputed facts, Gomez should be held vicariously liable. *See Blendingwell Music, Inc. v. Moor-Law, Inc.*, 612 F.Supp. 474, 482 (D.Del.1985).

Finally, plaintiffs ask that this court find on the basis of the present record, that the infringements were done wilfully. How-

---

**2.** In fact, Gomez admitted in his deposition that on at least one occasion he has received direct permission from a composer (not a plaintiff in this case) to use his music. Gomez Deposition at 66–67. He also testified that he has not contacted any of the plaintiffs to obtain permission to perform their songs. Gomez Deposition 61–62.

ever, as plaintiffs are asking for statutory damages and as the issue of damages will involve a hearing on the circumstances of the infringements and the degree of culpability of the defendants, a ruling on whether each incident of infringement was done wilfully will be determined at that time.

Now, Therefore,

IT IS BY THE COURT ORDERED that plaintiffs' motion for partial summary judgment as to liability is granted and liability for copyright infringement is hereby established, with the amount of statutory damages, costs, attorney's fees and entitlement to an injunction to be determined at trial.