BOZ SCAGGS MUSIC et al.

v.

KND CORPORATION et al.

Civ. No. H–79–235.

United States District Court,
D. Connecticut.

April 3, 1980.

Robert L. Keepnews, Gerald S. Sack, Alcorn, Bakewell & Smith, Hartford, Conn., for plaintiffs.

Glenn T. Terk, Greene & Bloom, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, Senior District Judge.

This is an action for copyright infringement, with jurisdiction founded on 28 U.S.C. § 1338(a) (1976). The plaintiffs are the proprietors of copyrights in 23 musical compositions,[1] and all of them belong to the American Society of Composers, Authors and Publishers (ASCAP), an unincorporated association with over 23,000 members. On behalf of its members, ASCAP licenses commercial radio and television stations, restaurants, nightclubs, and other establishments for non-dramatic public performances of copyrighted musical compositions owned by the members. If a licensee fails to pay the fees properly owed to ASCAP and efforts to resolve the delinquency or breach are unsuccessful, ASCAP terminates

its license with that user. If the user then persists in performing copyrighted works owned by ASCAP members without permission from the individual copyright owners, those owners commence copyright infringement actions similar to the instant litigation. Affidavit of Joshua S. Wattles, ¶ 2 (Dec. 12, 1979) [hereinafter Wattles Affidavit].

Defendant KND Corporation operates a commercial radio station for profit in Windsor, Connecticut known by the call letters WKND.[2] Co-defendant Kenneth N. Dawson is and was at all relevant times the vice-president of KND Corporation and general manager of WKND. In the latter capacity, Dawson is responsible for "oversee[ing] the day-to-day activities of the station," including responsibility for the direct supervision of the music director. Deposition of Kenneth N. Dawson at 30, 48, 75 (Sept. 21, 1979) [hereinafter Dawson Deposition]. He spends an average of 40 hours per week at the station. *See id.* at 41.

The material facts giving rise to this lawsuit are undisputed. WKND has not been licensed by ASCAP since March 1, 1977, a prior licensing agreement having expired on the previous day without renewal. Dawson Deposition at 64. Nevertheless, the station apparently continued to broadcast copyrighted musical compositions owned by ASCAP members without payment of fees to ASCAP or permission of the individual copyright holders. On August 10 and 11, 1977, and again on September 7 and 8, 1977, an ASCAP employee monitoring WKND's programming made tape recordings of the station's broadcasts, which included 23 musical compositions in which the plaintiffs hold copyrights. Deposition of Mario Sabatini at 3–5 (Feb. 4, 1980); *see* Affidavit of Kenneth Ayden at 2 (Dec. 17, 1979).

In response to this discovery, ASCAP sought payment of license fees from WKND retroactive to March 1, 1977. Counsel for ASCAP warned Dawson on March 15, 1979 that the failure to remit

---

**1.** Schedule A of the complaint lists the 23 musical works allegedly infringed.

**2.** WKND is the sole asset of KND Corporation.

payment of such fees would result in the commencement of litigation. Wattles Affidavit at 3 & Exhibit 6. When Dawson failed to respond to ASCAP's satisfaction, this action was filed. Charging that the defendants infringed the plaintiffs' copyrights in the 23 musical works mentioned above, the complaint prays for injunctive relief, statutory damages, costs, and attorneys' fees.

The plaintiffs have now moved for summary judgment under Fed.R.Civ.P. 56. Because "the pleadings, depositions, . . . and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," *id.* 56(c), the motion must be granted. *Shapiro, Bernstein & Co. v. "The Log Cabin Club Association,"* 365 F.Supp. 325, 328 (N.D.W.Va.1973) (*citing Associated Music Publishers, Inc. v. Debs Memorial Radio Fund, Inc.*, 141 F.2d 852 (2d Cir.), *cert. denied*, 323 U.S. 766, 65 S.Ct. 120, 89 L.Ed. 613 (1944), *and Houghton Mifflin Co. v. Stackpole Sons, Inc.*, 113 F.2d 627 (2d Cir. 1940)).

### Liability of KND Corporation

■ "The economic philosophy behind the [constitutional] clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts.' "[3] *Mazer v. Stein*, 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954). In order to effectuate that end,

Congress "grant[ed] valuable, enforceable rights to authors, publishers, etc., without burdensome requirements," *Washingtonian Publishing Co. v. Pearson*, 306 U.S. 30, 36, 59 S.Ct. 397, 400, 83 L.Ed. 470 (1939), among which is the right to sue for infringement, *see* 17 U.S.C. § 101 (1976).[4] In order to establish liability for infringement of copyright in musical compositions, a plaintiff must prove the following:[5]

"(1) the originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under Title 17, United States Code; (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action; (4) that the compositions were performed publicly for profit [by the defendants]; and (5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance."

*Shapiro, Bernstein & Co. v. "The Log Cabin Club Association," supra*, at 328 n.4. *Accord, Chess Music, Inc. v. Tadych*, 467 F.Supp. 819, 821 (E.D.Wis.1979).

■ Plaintiffs have made out a prima facie case as to the first three elements by submitting certified copies of copyright registration certificates, recorded assignments of copyright, and other recorded documents pertaining to each of the musical compositions in suit. It has long been established that such documents "raise[] . . . a presumption of the *authorship* of lyrics and music indicated therein, and of their *originality* and of the *validity* of the copyright in question." *Remick Music Corp. v. Interstate Hotel Co.*, 58 F.Supp. 523, 531 (D.Neb.

---

**3.** Article 1, § 8, cl. 8 of the Consitution provides:

"The Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

**4.** The causes of action giving rise to this lawsuit accrued prior to January 1, 1978. On January 1, 1978, a complete revision of the Copyright Act of 1909 took effect. Pursuant to that revision, Pub. L. No. 94–553, 90 Stat. 2541, § 112 (Transitional and Supplementary Provisions), found at 17 U.S.C. § 501 Note (Supp. I

1977), "All causes of action that arose under Title 17 before January 1, 1978 shall be governed by Title 17 as it existed when the cause of action arose." Thus, all citations refer to the Copyright Act of 1909, 17 U.S.C. §§ 1–216 (1976).

**5.** Section 1(e) of the Copyright Act, 17 U.S.C. § 1(e) (1976), confers upon the copyright owner "the exclusive right . . . [t]o perform the copyrighted work publicly for profit if it be a musical composition," a right protected by the statutory remedies for infringement found in 17 U.S.C. § 101 (1976).

1944) (emphasis added), *aff'd*, 157 F.2d 744 (8th Cir. 1946), *cert. denied*, 329 U.S. 809, 67 S.Ct. 622, 91 L.Ed. 691 (1947); *see Tennessee Fabricating Co. v. Moultrie Mfg. Co.*, 421 F.2d. 279, 282 (5th Cir.),*cert. denied*, 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970). With respect to 19 of the 23 songs at issue here, the registration certificates constitute prima facie evidence that the copyright is owned by a plaintiff in this action. 17 U.S.C. § 209 (1976).[6] With respect to the remaining four songs, the registration certificates have been supplemented with copies of recorded assignments that, taken together, indicate that plaintiffs in this case own copyrights in those four as well. The defendants have failed to produce any evidence to the contrary on these points. Thus, originality, authorship, compliance with statutory formalities, and ownership must all be taken as proved.

■ The uncontroverted deposition testimony of Mario Sabatini and affidavit of Kenneth Ayden establish that the plaintiffs' compositions were publicly performed for profit by the defendants on the dates alleged in the complaint. The defendants cannot create a factual dispute on this point simply by denying any knowledge of whether the 23 musical compositions were played on their radio station on the alleged dates. *See* Dawson Deposition at 121–26. Nor is it material to the issue of whether the compositions were performed for profit that WKND may have been operating at a loss. *See id.* at 77. The station is run for profit-making purposes, *id.*, and the challenged broadcasts "were in aid of the general business of the defendants." *Associated Music Publishers, Inc. v. Debs Memorial Radio Fund, Inc., supra*, at 855. This is more than sufficient to meet the "for profit" requirement in an infringement action. *See id.*

With respect to the final element of the plaintiffs' case—the absence of permission from the copyright owners or their representatives—defendant Dawson has admitted that such permission was lacking. Dawson Deposition at 66–68. It therefore appears that a case of copyright infringement has been proved as to each of the musical compositions involved and that KND Corporation, as the operator of WKND, is liable on all 23 causes of action.

### Liability of Dawson

■ The plaintiffs also seek to fasten personal liability on Kenneth Dawson, who as vice-president of KND Corporation and full-time general manager of WKND allegedly had the capacity to prevent the proved infringements. "Although the [Copyright] Act does not specifically delineate what kind or degree of participation in an infringement is actionable, it has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161–62 (2d Cir. 1971) (footnote omitted). Thus, the Second Circuit has concluded that "one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Id.* at 1162 (*citing Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). And this is so "even in the absence of actual knowledge that the copyright monopoly is being impaired." *Shapiro, Bernstein & Co. v. H. L. Green Co., supra*, at 307.

There can be no question that under these criteria, Dawson should be held jointly liable with KND Corporation in his individual capacity. By his own admission, he had the responsibility to "oversee the day-to-day activities of the station," had "pretty much complete control over the operations of the station," and had "direct supervision" over the music director. Dawson Deposition at 30, 48, 75; *see id.* at 122. Moreover, as general manager of WKND, Dawson unquestionably had a direct stake in the financial success of the station; a practice that would minimize expenses while at the same time not diminish WKND's share of the listening audience would obviously confer

---

**6.** Title 17 U.S.C. § 209 (1976) provides that the certificate of registration "shall be admitted in any court as prima facie evidence of the facts stated therein."

an economic benefit on KND Corporation and, in turn, on its key officer and employee.

The imposition of vicarious liability on a controlling individual, even in the absence of any knowledge of infringement, is premised on the belief that the defendant "is in a position to police the conduct of the 'primary' infringer." *Shapiro, Bernstein & Co. v. H. L. Green Co., supra*, at 309; *see Gershwin Publishing Corp. v. Columbia Artists Management, Inc., supra*, at 1162. Dawson certainly occupied such a position in the instant case. Yet he admits that he took no precautions to prevent copyright infringement from occurring at WKND. Dawson Deposition at 76. Under these circumstances, Dawson should be held jointly liable with KND Corporation for the proved infringements.

### Relief

Under 17 U.S.C. § 101(a) (1976), "If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable . . . [t]o an injunction restraining such infringement." *See also id.* § 112. Having concluded that the defendants infringed the copyrights in the 23 musical compositions named in Schedule A of the complaint, this court will enjoin said defendants from further infringement of those works.

The plaintiffs may also recover damages from the defendants pursuant to 17 U.S.C. § 101(b) (1976). Lacking proof of plaintiffs' actual damages or defendants' profits, this court must award statutory damages in an amount not greater than $5,000 and not less than $250 for each incidence of infringement. *See Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1102 (2d Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976). Within those limits, the assessment of damages lies within the court's sound discretion and sense of justice. *See F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231–32, 73 S.Ct. 222, 224–225, 97 L.Ed. 276 (1952). Among the factors to be considered in arriving at a determination of damages are the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind—whether wilful, knowing, or merely innocent. *See L & L White Metal Casting Corp. v. Cornell Metal Specialties Corp.*, 353 F.Supp. 1170, 1176 (S.D.N.Y.1972).

The defendants do not contest the plaintiffs' assertion that had WKND been licensed through November 30, 1979, it would owe ASCAP well over $16,000 in fees, subject to audit. Wattles Affidavit at 2. In addition, under the blanket radio license agreement that WKND failed to execute after March 1, 1977, these unpaid fees have continued to mount since December 1, 1979, though to what extent this court is uncertain. *Id.*, Exhibit 2, at § 6, ¶¶ A–B. Moreover, the defendants' conduct cannot be termed innocent. They had been sued once before for copyright infringement and although that case was settled, Dawson admits that since then he has been fully aware of the need to obtain the permission of a copyright owner before broadcasting that owner's composition on the radio. *See* Dawson Deposition at 63. Yet as WKND's general manager, Dawson neither sought such permission nor took any steps to avoid infringement. *Id.* at 67, 76. And WKND is not the only station with which Dawson is affiliated that has had copyright difficulties. A.D.S. Broadcasting Corporation, of which Dawson is vice-president, is presently being sued along with Dawson for infringement allegedly occurring on radio station WADS. *Bob Merrill v. A.D.S. Broadcasting Corp.*, Civ. No. N–79–192 (D.Conn., filed June 15, 1979). Radio station WXLS, in which Dawson owns an 80% interest, has not submitted a single payment under the terms of its license agreement since August 9, 1979. Wattles Affidavit at 4. Taken together, these incidents paint a picture of a businessman who believes either that he is not subject to the copyright laws of the United States or that he can ignore them with impunity.

These factors should all be taken into account in assessing the degree of the defendants' culpability and the damage suffered by the plaintiffs. At the same time, it must be remembered that the Act contemplates an award of statutory damages in lieu of actual damages and profits, and not an award premised on notions of penalty or punishment. *Russell & Stoll Co. v. Oceanic Elec. Supply Co.*, 80 F.2d 864, 865 (2d Cir. 1936) (per curiam).[7] Considering all the circumstances, the court awards to the plaintiffs statutory damages in the amount of $1,000 for each of the 23 infringements proved in this case.

Section 116 of the Act, 17 U.S.C. § 116 (1976), provides:

"In all actions, suits, or proceedings under this title, except when brought by or against the United States or any officer thereof, full costs shall be allowed, and the court may award to the prevailing party a reasonable attorney's fee as part of the costs."

The award of full costs (other than attorneys' fees) is mandatory, *Marks v. Leo Feist, Inc.*, 8 F.2d 460, 461 (2d Cir. 1925), and accordingly will be allowed to the plaintiffs. The award of reasonable attorneys' fees in a copyright action, however, lies within the sound discretion of the court. *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 122 (2d Cir.), *cert. denied*, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962). Some of the considerations that might justify the *denial* of fees include the presence of a complex or novel issue of law that the defendants litigate vigorously and in good faith, *Official Aviation Guide Co. v. American Aviation Ass'n*, 162 F.2d 541, 543 (7th Cir. 1947); the defendants' status as innocent, rather than wilful or knowing, infringers, *see Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F.Supp. 895, 904 (E.D.N.Y.1977), *aff'd mem.*, 578 F.2d 1369 (2d Cir. 1978); bad faith on the plaintiffs' part in prosecuting the action, *see Leo Feist, Inc. v. Apollo Records, N.Y. Corp*, 300 F.Supp. 32, 43 (S.D.N.Y.), *aff'd*, 418 F.2d 1249 (2d Cir. 1969), *cert. denied*,

398 U.S. 904, 90 S.Ct. 1694, 26 L.Ed.2d 63 (1970); or a good faith attempt by the defendants to avoid infringement, *Shapiro, Bernstein & Co. v. Veltin*, 47 F.Supp. 648, 650 (W.D.La.1942).

None of these justifications for denying an award of fees is present in this case. Quite the contrary, liability is unquestionable on both the law and the facts; the defendants' conduct, whatever their precise state of mind, was certainly not innocent; they repeatedly rebuffed offers to resolve this dispute prior to the commencement of litigation; their defense efforts in this action have been spare; and they made no attempt whatsoever to avoid infringement although they were well aware of the law's requirements. While statutory damages are assessed in lieu of actual damages, "'the counsel fees provision was designed "to penalize the losing party as [well as] to compensate the prevailing party."'" *Leo Feist, Inc. v. Apollo Records, N.Y. Corp., supra*, at 43 (*quoting Norbay Music, Inc. v. King Records, Inc.*, 249 F.Supp. 285, 289 (S.D.N.Y.1966)). Equity dictates that the defendants be required to pay the plaintiffs an allowance for attorneys' fees.

### Orders

In accordance with the determinations made above, the plaintiffs' motion for summary judgment is granted, and it is SO ORDERED. It is further

ORDERED that defendant KND Corporation, and its officers, agents, servants, and employees (including defendant Kenneth N. Dawson) be, and they hereby are, enjoined and restrained from further infringement of the plaintiffs' copyrights in the 23 musical compositions listed on Schedule A of the complaint in this action. It is further

ORDERED that plaintiffs have and recover of and from defendants KND Corporation and Kenneth N. Dawson, who are jointly liable, the sum of $23,000 statutory

---

**7.** The Copyright Act explicitly provides that the statutory damages specified therein "shall not be regarded as a penalty." 17 U.S.C. § 101(b) (1976).

damages, plus their costs expended herein. It is further

ORDERED that plaintiffs be, and they hereby are, directed to file within 15 days of the date of this memorandum of decision an affidavit of time and expenses incurred by plaintiffs' counsel. Defendants shall have 15 days from the date of plaintiffs' submissions to challenge the reasonableness of said averments and to submit evidence of mitigating factors. *See Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028–29 (2d Cir. 1979). Following receipt of defendants' challenge, if any, the court shall assess against defendants such attorneys' fees as it shall deem reasonable and appropriate.