REALSONGS, John T. Benson Publishing Co., Paragon Associates, Inc., WB Music Corp., E/A Music, Inc., Keith Sweat Publishing, Vintertainment Publishing and Edward Grant, Inc.

v.

GULF BROADCASTING CORP., Mary S. Lambert and Louis Lambert.

Civ. A. No. 91–809–B.

United States District Court, M.D. Louisiana.

May 27, 1993.

**90**

Virginia N. Roddy, Preaus, Roddy & Krebs, New Orleans, LA, for plaintiffs.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Plaintiffs filed this suit to recover damages and injunctive relief from the defendants for copyright infringements pursuant to 17 U.S.C. §§ 106(4) and 601(a). This matter is now before the Court on cross motions for summary judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1338(a). For reasons which follow, the Court grants partial summary judgment.

### I. The Facts

Plaintiffs own copyrights in songs allegedly played without a license by radio station

WSLG. Defendants Mary S. Lambert and Louis Lambert are President and Secretary Treasurer, respectively, of Gulf Broadcasting Corp., as well as its only shareholders and directors. Gulf Broadcasting Corp. owns the license to WSLG. Mary Lambert has numerous duties at the radio station, which include the hiring and firing of employees, billings for the station, and signing checks. Together, the Lamberts determine salaries and make all important decisions affecting the station, including those related to financing, format and ownership. Mary Lambert spends about two days a week at the station handling business matters. Louis Lambert consults with his wife concerning station matters, but spends most of his time is spent engaged in the practice of law and as an elected member of the Louisiana Public Service Commission.

WSLG is a 10,000 watt AM station operating out of Gonzales, Louisiana. Prior to February of 1988, the station played light rock. For economic reasons, the station changed to an all-talk format. Prior to the format change, the station was licensed by the American Society of Composers, Authors, and Publishers (ASCAP).[1] When the Lamberts decided to change formats, they approached ASCAP to review the station contract in order to play four hours a week of music, rather than playing music full-time. The blanket contract was cancelled on March 1, 1988. The parties then engaged in discussions for a per program license. On May 9, 1988, Mary Lambert notified ASCAP by letter that the station would be using Sun Radio Talk Network and would not need a per program license. In response to her letter, ASCAP advised Mary Lambert that virtually all stations with "non-music" format make some use of music, even if incidental, and a per program license was designed for such stations. ASAP urged Mary Lambert to reconsider the benefits of the license and reminded her that if the station was not licensed, any performances of works in the ASCAP repertory, including incidental uses, without prior permission from members,

1. ASCAP is a non-exclusive licensing agent for compositions of its members and sells licenses to music clubs, bars, stores, television and radio stations, and the like. Each of the plaintiffs is a member of ASCAP.

would constitute copyright infringements.[2] No license was executed between ASCAP and the defendants. On December 21, 1988, ASCAP advised Mary Lambert that tape recordings had been made of station broadcasts which disclosed the station had played plaintiff's compositions which constituted an infringement of plaintiffs' copyrights.[3] AS-CAP suggested that unless parties reached an "amicable settlement," it would take legal action against defendants. The lawsuit followed.

## II. Copyright law

It is a violation of a copyright in a musical composition to perform that work without a license.[4] A copyright owner is entitled to recover for each infringement either actual damages and loss of profits, or statutory damages of at least $500 and not more than $20,000 per violation.[5] The Court may increase the award of statutory damages up to $100,000 per infringement for wilful violations, but has discretion to reduce the award to not less than $200 per infringement if the infringer was not aware of or had reason to believe the acts constituted an infringement.[6] Injunctive relief is available[7] and costs and attorney fees are also recoverable at the court's discretion.[8] Plaintiffs seek statutory damages of $5,000 per violation, injunctive relief, costs and attorney fees in this case.

Defendants dispute their personal liability and whether any ASCAP music was played by the station.

## II. Liability

Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable.[9] The test of whether a corporate officer is jointly and severally liable with the corporation for copyright infringement is whether the officer has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.[10] The imposition of vicarious liability on a controlling individual, even in the absence of any knowledge of the infringement, is premised on the belief that the controlling individual is in a position to police the conduct of the "primary" infringer.[11] Whether the defendants had the right and ability to control the activities which infringe on copyrights and whether they had a direct financial interest in the activities are issues of law.[12]

The Lamberts claim they instructed all disc jockeys and station employees not to play ASCAP music. Signs which contained similar instructions were posted at the station. The station manager was responsible for keeping daily logs, and the Lamberts performed spot monitoring of programs. The Lamberts also argue that on the day

2. ASCAP letter of May 31, 1988, from Sheila Canovan to Mary Lambert.

3. These recordings are not the basis of this suit. The recordings which form the basis of this suit were made April 1, 1990.

4. 17 U.S.C. 106(4), 501(a).

5. 17 U.S.C. 504 (Supp.1992); Plaintiffs offer copies of the copyright certificates and the affidavit of Anthony Peretti, as prima facie evidence of valid copyrights in the songs claimed in this suit. The copies demonstrate that plaintiffs are owners of valid copyrights in the following songs: "BLAME IT ON THE RAIN," "I GO TO THE ROCK," HE WAS THERE ALL THE TIME," "DON'T STOP YOUR LOVE," and "AWESOME GOD." *Flick–Reedy Corp. v. Hydro–Line Mfg. Corp.,* 351 F.2d 546 (7th Cir.1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908 (D.Conn.1980); *Edward B. Marks*

*Music Corp. v. Borst Music Pub. Co., Inc.,* 110 F.Supp. 913 (D.N.J.1953).

6. 17 U.S.C. 504 (Supp.1992).

7. 17 U.S.C. 502(a).

8. 17 U.S.C. 505 (Supp.1992); *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77 (5th Cir.1987).

9. *Screen Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552 (2d Cir.1972).

10. *Warner Bros., Inc. v. Lobster Pot, Inc.,* 582 F.Supp. 478 (N.D.Ohio 1984).

11. *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908 (D.Conn.1980).

12. *Warner Bros., Inc.,* 582 F.Supp. 478.

ASCAP claims music from their repertory was played, the station sold air time to ministers who chose their own content during the paid air time.

■ Neither the copyright law nor jurisprudence relieve the Lamberts' of responsibility under the facts of this case. The question before the Court is not whether the Lamberts exercised or delegated responsibility to another individual, but whether the Lamberts retained the right to control the copyright activities. The Lamberts had the ultimate authority to determine whether to sell air time to individuals who may be primary infringers. Officers and shareholders of corporations in similar situations have been held liable for copyright infringement as long as they had the right and ability to control the infringing activities.[13] Thus, the Lamberts can be deemed to have acquiesced in the program because they allowed the ministers to select the program's content, even if the ministers were instructed not to perform copyrighted music.[14] Thus, the Court finds that the defendants had the right and ability to control the infringing activity at their radio station.

■ The second aspect of vicarious liability for copyright infringement is whether the defendants had a direct financial interest in the infringing activities. Defendants argue that they only received a per minute fee from the ministers for air time, and had no direct interest in the infringing activity. Defendants also claim that primary infringers hired the radio station, rather than the station hiring the infringers. The courts have not interpreted the "direct financial interest" requirement so narrowly. Defendants still have a direct financial interest in the infringing activity if the station is a for-profit enterprise and defendants benefit from its operation. The fact that WSLG may not be making a profit does not make it a non-profit organization. WSLG is still a commercial radio station and the profit, if any, would accrue to the Lamberts. Furthermore, the Lamberts loaned $245,000 of their personal funds for the continued operation of the station. Any profits generated at the station would help pay off that loan. It is clear that the Lamberts have a direct financial interest in Gulf Broadcasting and WSLG under the facts of this case.

Therefore, the Court finds as a matter of fact and law that the Lamberts may be held liable for the alleged infringement.

## IV. Whether the songs were played

■ Defendants also contest two other fact issues: whether the songs were played; and, whether some of the songs, if played, were on public domain.

In support of their motion for summary judgment, plaintiffs submitted the affidavit of Timothy Chestnut, who claims to have made tape recordings and logs of the station's broadcasts on April 1, 1990, between 7 a.m. and 6 p.m. at the White Rose Motel in Gonzales, Louisiana. Plaintiffs also submitted the affidavit of Kenneth Ayden, a music expert who confirmed that plaintiffs' songs can be heard on the tapes.[15]

**13.** *Warner Bros., Inc.,* 582 F.Supp. 478 (President and shareholder of restaurant corporation had right and ability to control activity, even though other individuals managed premises on day-to day basis and even though he told manager to instruct people not to play copyrighted music.); *Boz Scaggs Music,* 491 F.Supp. 908 (Corporate vice president and radio station general manager held jointly liable with corporation.); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288 (D.R.I. 1982) (Shareholders and officers of corporation which owned and operated a bar offering live entertainment liable for infringement where such individuals were managing agents of corporation, governed and controlled its infringing conduct and were aware of the plaintiff's rights.); *Unimusica, Inc. v. Spanish Community Radio, Inc.,* 1987 Copr.L.Dec. P 26,091, 1987 WL 16938 (D.N.M.) (President and majority stockholder of corporate radio station was primarily responsible for control, management, operation and maintenance of radio station therefore was vicariously liable as controlling individual); *Rare Blue Music, Inc. v. Cismek Corp.,* 1986 Copr.L.Dec. P 25,966, 1986 WL 517 (S.D.Tex.) (president and owner of a corporation that operated a radio station vicariously liable because he controlled the station).

**14.** *Warner Bros., Inc.,* 582 F.Supp. 478; *Rodgers v. Quests, Inc.,* 1982 Copr.L.Dec. P 25,343, 1981 WL 1391 (N.D.Ohio).

**15.** Plaintiffs claim the tape recordings demonstrate two of the songs were played during WSLG's Sunday morning "Gospel Music" program; two were played during WSLG's early afternoon "Urban Contemporary" music pro-

Defendants deny that the songs were actually played on their station. Unlike the defendants in *Boz Scaggs Music v. KND Corp.,*[16] which did not know whether songs were actually played on their station, the Lamberts deny that the songs were played. In *Boz Scaggs,* the Court held that the defendants' claim that they did not know whether the songs were played was insufficient to controvert the plaintiffs' affidavits which established the songs were actually played on the radio. This Court finds the defendants denial that the songs were played is insufficient to controvert the affidavits submitted by the plaintiffs. The Lamberts' affidavit was not made on personal knowledge as required by Rule 56 of the Federal Rules of Civil Procedure. The Lamberts' admit that their station has inadequate funds to tape the daily transmissions. The sworn affidavits of the disc jockeys that they have never played ASCAP music are irrelevant to this infringement suit because on the day in question, the air time was sold to non-station employees. The station log reflects the shows which were played on April 1, 1990, is consistent with the tapes Chestnut made. The Lamberts do not claim they monitored the programs played at the station on April 1, 1990 and kept logs of the content of each show. In fact, there is no evidence in the record which reflects the content of each show except for the sworn affidavit of Ayden. Thus, the Court finds there is no genuine issue of fact concerning whether the songs were played. The evidence submitted by plaintiffs is uncontroverted and conclusively establishes that the songs were in fact played on defendants' station.

## V. Authorship

■ Defendants also contend that the affidavit of Ayden says nothing about whether the songs played on defendants' station on April 1, 1990 are the songs performed by the authors who are claiming copyright infringement. The Court finds there is a material issue of fact in dispute on this issue which cannot be resolved based on the evidence now before the Court. As noted earlier, one of the defenses relied on by the defendants is that some of the songs are on public domain. Without sufficient evidence to determine the authorship of the songs recorded by Chestnut and confirmed by Ayden, plaintiffs' motion for summary judgment on this issue must be denied.

In summary, the Court finds that Louis and Mary Lambert are vicariously liable for the infringement, and that the songs were in fact played by WSLG on April 1, 1990. Therefore, the Court GRANTS a partial summary judgment on these two issues. The issues of the authorship of the songs and whether some of the songs were on public domain remains unresolved.

Therefore, both parties' motions for summary judgment on these issues are DENIED. The plaintiffs' requests for injunctive relief, statutory damages and costs and attorney fees will be considered after all other issues are resolved.

---

gram; and one song played during a "live church service." The three programs are identified on the station program log for April 1, 1990.

16. 491 F.Supp. 908 (D.Conn.1980).