**BROADCAST MUSIC, INC.,**
**et al., Plaintiffs,**

**v.**

**84–88 BROADWAY, INC. d/b/a**
**J.P. Anthony's and John A.**
**Schepisi, Defendants.**

**Civil Action No. 94–5470.**

United States District Court,
D. New Jersey.

Oct. 22, 1996.

Lindsey H. Taylor, Friedman Siegelbaum, Roseland, NJ, for Plaintiffs.

Denise J. Waltuch, Schepisi & McLaughlin, P.A., Englewood Cliffs, NJ, for Defendants.

ORLOFSKY, District Judge:

Plaintiffs and Defendants have filed cross-motions for summary judgment on Plaintiffs' claims for violations of the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1338(a), which vests a federal district court with original jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks."

The primary issue raised by the parties' cross-motions is whether a sub-licensing agreement entered into between Digital Music Service ("Digital") and Defendant, 84–88 Broadway, Inc. d/b/a J.P. Anthony's ("Anthony's"), to provide background music containing copyrighted compositions vests Anthony's with the right to host live or disc jockey performances of the same copyrighted compositions licensed by Plaintiff, Broadcast Music, Inc. ("BMI"). I conclude that the sub-licensing agreement between Anthony's and Digital does not confer such authority upon Anthony's, and therefore find that the live or disc jockey performances at Anthony's of compositions licensed by BMI infringed the Plaintiffs' copyrights.

Accordingly, Plaintiffs' motion for summary judgment will be granted as to Defendant, Anthony's, and Defendants' cross-motion for summary judgment will be denied as to liability. Plaintiffs' motion for summary judgment as to Defendant, John Schepisi, will be denied, because the Plaintiffs have failed to provide the Court with evidence in the summary judgment record that Mr. Schepisi had the right and ability to supervise the infringing activities. Because I find that there is a genuine issue of material fact as to whether the Defendants' infringement was wilful, I will deny both Plaintiffs' and Defendants' motions for summary judgment as to damages, attorney's fees and costs.

## I. Facts and Procedural Background

Plaintiff, BMI, is a performing rights society, which, pursuant to separate agreements with copyright holders, purchases all the rights that the copyright holders possess to perform and to license others to perform their copyrighted works. (Schepisi Cert.

¶ 6). BMI then licenses the right to perform the copyrighted works to third parties such as Digital. The other Plaintiffs are the original holders of the copyrights in the musical compositions which are the subject of this lawsuit. (Amended Complaint ¶ 4)

In August, 1993, Anthony's, entered into a sub-licensing agreement with Digital (the "Sub-licensing Agreement" or "Agreement"), for the provision of background music via the "Digital Music Service." (Schepisi Cert.Ex. B).[1] Prior to November 30, 1993, BMI learned that Anthony's was offering live and disc jockey performances of musical compositions of copyrighted works, the rights to which BMI had purchased from the individual copyright holders. (Stevens Decl. at 1–2).

BMI did not issue Anthony's a license to offer such live and disc jockey performances, nor had Anthony's obtained permission from the copyright owners whose music was being publicly performed. (*Id.* at 2). By letters dated, December 3, 1993, December 22, 1993, January 11, 1994, February 9, 1994, May 20, 1994 and July 14, 1994, respectively, BMI advised Anthony's that a license from BMI was required in order for such copyrighted music to be publicly performed. (*Id.* at 2, Ex. C).

In response, Defendants wrote to BMI on February 9, 1994, stating that "[a]ny fees for music [at J.P. Anthony's] are being paid pursuant to a licensing agreement with [Digital] which is presently servicing the subject premises." (*Id.* at 2, Ex. C). BMI then informed Defendants that the Sub-licensing Agreement with Digital only granted Defen-

dants the right to broadcast the copyrighted music over the Digital cable system and did not give Defendants the right to host live performances, or the playing of CD's and tapes of copyrighted music licensed by BMI. (*Id.* at 3; *see also* Schepisi Cert.Ex. A ¶¶ 14–15).

BMI offered to license directly to the Defendants the right to host live or disc jockey performances of the BMI-licensed copyrighted music, however, Defendants refused to enter into such an agreement, contending that to do so simply would be paying again for that which they already had the right to do. (Stevens Decl. ¶ 4).

In an effort to confirm that Anthony's was, in fact, continuing to host such live performances, BMI sent investigators to Anthony's on May 11, 1994, and May 13, 1994. The BMI investigators observed the performance at Anthony's of at least ten musical compositions licensed by BMI. (Stevens Decl.Exs. A and B).

After Anthony's refused to cease hosting the public performances of the BMI-licensed works, Plaintiffs filed their original complaint in this copyright infringement action on November 23, 1994, alleging that, in at least ten instances, the Defendants, Anthony's and its stockholder and officer, John Schepisi, hosted the public performance of their copyrighted musical compositions without authorization.

Subsequent to the filing of the original complaint, BMI investigators discovered that on February 1, 1995, and February 5, 1995,

---

**1.** The Sub-licensing Agreement provides, in relevant part, that for a designated fee, Digital "shall provide subscription music programming (the "Digital Music Service") to [Anthony's] at the Premises." (Sub-licencing Agreement ¶ 1).

In addition, the Agreement provides that Anthony's "agrees that without the prior written consent of [Digital], the Digital Music Service or signal applicable thereto shall not be (i) copied, recorded or dubbed for additional replay within or outside of the premises, or (ii) be interrupted or supplemented by [Anthony's] for the purpose of inserting therein any commercial announcements for which [Anthony's] or any other person receives consideration of any kind, or (iii) used to displace a live orchestra or an accompaniment to dancing, skating, or other similar forms of entertainments for which an entrance fee is charged.

[Anthony's] shall not transmit the Digital Music Service nor use the services contained therein outside the Premises as designated in this Agreement." (Sublicensing Agreement ¶ 5).

The Agreement also states that [Anthony's] grants [Digital] ... the right to install all necessary equipment for receiving the Digital Music Service, including but not limited to an exterior antenna, a cable television connection or a satellite receiver "dish". (Sublicensing Agreement ¶ 8).

The Agreement further provides that "[s]ubject to [Anthony's] compl[iance] with Section 5 of this Agreement, [Anthony's] shall not be responsible for any copyright fees or royalties associated with [Digital's] provision of the Digital Music Service to [Anthony's]." (Sublicensing Agreement ¶ 9).

Anthony's continued to host the public performance of at least seventeen BMI-licensed works. (Stevens Decl.Exs. A and B). As a result, Plaintiffs sought leave to file, and filed an amended complaint on April 25, 1995, incorporating their earlier claims and adding the seventeen additional instances of alleged infringement. (*See* Amended Complaint).[2]

Both Plaintiffs and Defendants have cross-moved for summary judgment on Plaintiffs' amended complaint.

## II. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996); *Hersh v. Allen Products, Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Helen L. v. DiDario*, 46 F.3d 325, 329 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Under this rule, a party must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which its opponent has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Nonetheless, the moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id.*

## III. Discussion

▉ In order to prevail on a claim for the infringement of a copyright in a musical composition, a plaintiff must show: (1) originality and authorship of the composition; (2) compliance with the formalities of the Copyright Act; (3) proprietary rights in the work involved; (4) public performance of the composition involved for profit; and (5) lack of authorization for public performance.

---

**2.** The following songs ("subject compositions") are alleged to have been publicly performed at Anthony's: "Diamond Girl," "Angel in the Morning," "She's a Bad Mama Jama," "Little Help from My Friends," "We Can Work it Out," "Layla," "Takin' Care of Business," "Stand," "Fields of Gold," "Midnight Blue," "Rocky Raccoon," "Let it Be," "Bad to the Bone," "Ob-la-di Ob-la-da," "I Honestly Love You," "Only the Lonely," "Walk like an Egyptian," "Johnny B. Goode," "I Got You Babe," "Oh Pretty Woman," "Goodbye Yellow Brick Road," "Me and Bobby McGee," "Just My Imagination Running Away with Me," "Back in the USSR," "I Think I Love You," "Wonder of You," and "Rose."

*Broadcast Music, Inc. v. WPBK, Inc.*, 922 F.Supp. 803, 805 (W.D.N.Y.1996) (citing *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912 (D.Conn.1980)); *Broadcast Music, Inc. v. 3–B, Inc.*, No. 95–70499, 1996 WL 426486, *2 (E.D.Mich. Jan. 16, 1996). Plaintiffs must establish each of the five elements in order to succeed on their claim for copyright infringement.

### A. *Originality, Compliance with Copyright Act and Proprietary Rights*

Defendants do not contest that the Plaintiffs are able to establish the first three elements of a copyright infringement claim. (Defendants' Reply at 6). The originality, registration and proprietary interest elements of copyright infringement are satisfied by the uncontroverted facts contained in the Declaration of Judith M. Saffer, Assistant General Counsel of BMI, together with the documents annexed to her declaration. *See 3–B, Inc.*, 1996 WL 426486, *2 (affidavits in support of copyright infringement action constitute sufficient evidence of the undisputed facts contained therein) (citing *BMI v. Pine Belt Investment Developers, Inc.*, 657 F.Supp. 1016, 1020 (S.D.Miss.1987)).

■ Ms. Saffer's Declaration incorporates the names of the authors and publishers of each of the subject compositions, the date of copyright registration and the registration number. (Saffer Decl. at 1–2). Annexed to her Declaration are copies of the registration certificates for each of the subject compositions. A registration certificate establishes the originality and authorship of the compositions, as well as compliance with the formalities of the Copyright Act. *Broadcast Music, Inc. v. Hampton Beach Casino Ballroom Inc.*, No. 94–248, 1995 WL 803576, *3 (D.N.H. Aug. 30, 1995); *Blendingwell Music, Inc. v. Moor–Law, Inc.*, 612 F.Supp. 474, 480 (D.Del.1985) (certificates constitute *prima facie* evidence that copyright is valid). Because Defendants have provided no evidence to the contrary, I find that Plaintiffs have established the first two elements of copyright infringement.

■ With respect to the third element, proprietary interest, "where the plaintiff is also the author of [the] musical compositions, the certificates are *prima facie* evidence of proprietorship." *Hampton Beach,* 1995 WL 803576, *4. However, where a plaintiff such as BMI is not an author, but an assignee of previously registered copyrights, "the plaintiff must show evidence beyond the registration certificate to show proprietary rights in the compositions." *Id.*

Plaintiffs rely on Ms. Saffer's assertions contained in her Declaration that BMI has proprietary interests in each of the copyrighted compositions it licenses, as well as the registration certificates attached to her Declaration, in order to meet their burden. (Saffer Decl. at 2, Ex. B). Because the Defendants do not challenge this evidence and present no evidence that BMI does not have a proprietary interest in the BMI-licensed works, I find that the uncontroverted evidence contained in the summary judgment record demonstrates that BMI has proprietary rights in each of the subject compositions. *See Hampton Beach,* 1995 WL 803576, *4; *Pine Belt Inv. Developers, Inc.*, 657 F.Supp. at 1020 (uncontested evidence contained in registration certificates and accompanying affidavit held sufficient to establish plaintiff's proprietary rights).

### B. *Public Performance for Profit*

■ The fourth element, public performance, is established by the uncontroverted evidence contained in the Licensing Infringement Reports of Joanne Lepko and the Certified Infringement Reports of Ross Schneider. (*See* Stevens Decl.Exs. A and B). Ms. Lepko and Mr. Schneider were both hired by BMI for the purpose of visiting Anthony's and making written reports of musical compositions which were publicly performed at the establishment. The Infringement Reports indicate that all of the BMI-licensed compositions which are alleged in Plaintiffs' amended complaint to have been performed, were, in fact, performed.

" 'It is well settled that investigators' affidavits can constitute sufficient proof of live public performance.' " *Hampton Beach,* 1995 WL 803576, *4 (citing *Broadcast Music, Inc. v. Larkin,* 672 F.Supp. 531, 533 (D.Me. 1987)). Although Defendants contend that

the information contained in the Infringement Reports is inaccurate and incomplete, and therefore "raises some question as to whether, in fact, the song alleged to have been performed was, in fact, performed," (Defendants' Reply at 8), Defendants present no evidence in support of this contention and "must do more than simply show that there is some metaphysical doubt as to material facts," in order to defend successfully against Plaintiffs' motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Accordingly, I find that the undisputed evidence contained in the summary judgment record reflects that the Plaintiffs have established that the twenty-seven songs they allege were publicly performed at Anthony's were, in fact, publicly performed.[3]

In addition, BMI must also demonstrate that the public performance was for profit. Although BMI has not presented any evidence of profit, in the absence of such evidence, a court may infer that a defendant derived some pecuniary benefit from the public performance. *Larkin,* 672 F.Supp. at 534; *Hampton Beach,* 1995 WL 803576, *4. Accordingly, because this Court finds it only logical to assume that the Defendants hosted such public performances in order to attract customers whose patronage enables the Defendants to make a profit, or at a minimum, increase their income, the Court will infer that the Defendants derived pecuniary benefit from the public performances. "If music did not pay, it would be given up." *See Herbert v. Shanley Co.,* 242 U.S. 591, 595, 37 S.Ct. 232, 233, 61 L.Ed. 511 (1917).

### C. Lack of Authorization

█ Finally, in order to succeed on their copyright infringement claim, the Plaintiffs must show that the Defendants lacked proper authorization to host the public performances of the BMI-licensed works. Plaintiffs point to the Declaration of Lawrence Stevens, BMI's Assistant Vice–President, General Licensing, in order to satisfy this element. In his Declaration, Mr. Stevens

states that the Defendants did not enter into a BMI license agreement, nor were the performances otherwise authorized. (Stevens Decl. at 2).

Defendants, however, contend that the Sub-licensing Agreement entered into between Digital and Anthony's for the provision of a background music subscription authorized such live or disc jockey performances.[4] This Court disagrees. A review of the provisions of the Sub-licensing Agreement reveals that it is merely a subscription contract between Defendants and Digital requiring Digital to provide Defendants with access to, and permission to broadcast the "Digital Music Service."

Although the plain language of the Agreement neither explicitly nor implicitly vests the Defendants with the right to host live or disc jockey performances of any of the BMI-licensed musical compositions, the purpose of the Agreement is clearly to set forth its terms and conditions relating to Digital's provision of its "Digital Music Service" to Anthony's. The Agreement expressly limits the use of Digital's services to the extent that Anthony's *could not record the music for other replay, could not interrupt the programming for commercial announcements, and could not use the programming to replace live music or as an accompaniment for dancing, skating or similar entertainment* (Sub-licensing Agreement ¶ 5) (emphasis supplied). Given these express limitations, it is evident that the Agreement was not intended to allow the Defendants to host live or disc jockey performances of the compositions contained in the Digital Music Service subscription. Defendants' interpretation of this unambiguous document stretches the Agreement's four corners farther than they were intended to reach.

Defendants' erroneous belief that the Agreement authorized such live and disc jockey performances, even if *bona fide,* does not exonerate them from liability for copyright infringement. *See* Melville B. Nimmer and David Nimmer, *Nimmer on Copyright,* vol. 3, § 13.08 at 13–280 (1996 ed.) (hereinaf-

---

**3.** *See* note 2, *supra.*

**4.** The relevant provisions of the Sub-licensing Agreement are set forth in note 1, *supra.*

ter *"Nimmer"*) ("[i]n actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability"); *WPBK, Inc.*, 922 F.Supp. at 806. In *WPBK, Inc.*, the defendants contended that a licensing agreement entered into between the owner of a jukebox located on defendants' premises and BMI, authorizing BMI-licensed songs to be played publicly via the jukebox, permitted the same songs to be performed on the defendants' premises by means of any other medium. The defendants further argued that they did not believe that they needed to obtain an additional license in order to play the BMI-licensed songs on a record machine on karaoke nights. The court disagreed and found the defendants liable for copyright infringement. *Id.*

In so holding, the court reasoned that:

[a]ccepting defendants' argument would permit defendants to play, without a license, any type of recorded music, whether through a karaoke machine or by hiring a disc jockey, so long as they played the music through the same sound system which was utilized by a properly licensed machine. I find such an argument unconvincing, and defendants have failed to support their position with any case authority whatsoever. At best, defendants' contentions go to the issue of damages, specifically, whether the infringements were wilful or innocent, but not to the issue of liability.

*Id.* at 806.

Likewise, I find the Defendants' contention that the Sub-licensing Agreement grants them the authority to host live and disc jockey performances of BMI-licensed songs equally unconvincing and untenable. If Defendants were correct, any proprietor wishing to avoid the licensing fees charged by licensing companies such as BMI, for permission to host public performances of BMI-licensed songs, could instead obtain a subscription for background music service from an intermediary such as Digital and pay a substantially lower sum for the same rights. Such a result would be both anomalous and inequitable.

Unadorned by Defendants' hyperbole, the Agreement between Digital and Anthony's gave Anthony's the right to play the background music provided in the "Digital Music Service" subscription, neither more nor less. The fact that Digital's background musical service may have contained BMI-licensed works is legally irrelevant. Moreover, the separate licensing of protected works by BMI for live performances does not constitute the payment of an additional licensing fee to BMI. Indeed, Defendants' reading of the Agreement amounts to a form of licensing which is best described as "poetic licensing."

Having concluded that the Sub-licensing Agreement entered into between Defendants and Digital does not authorize the public performance of the BMI-licensed songs, I find that the undisputed evidence contained in the summary judgment record reflects that the Defendants lacked authorization for such public performances. *See Nimmer*, § 13.03 at 13–72 ("to the extent that defendant exceeds the contractual terms [of a licensing agreement] ... and incorporates unlicensed elements, liability may be premised upon those elements").

### D. *Defendants' Vicarious Liability for the Performance of the Infringing Works*

Although neither Defendant, Anthony's, nor Defendant, John Schepisi, actually performed the infringing works, "it has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971).

Anthony's liability for the performance of the infringing works at the establishment stems from the principle that a "proprietor [is] liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhances income. He is liable whether the band is considered, as a technical matter, an employee, or an independent contractor." *Id.* Thus, it is clear that Anthony's is vicariously liable for

the performance of any infringing work at the establishment. Accordingly, summary judgment will be granted as to liability in favor of Plaintiffs and against Defendant, Anthony's.

■ An officer of the proprietor-corporation may be liable for the performance of the infringing works if he " 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.' " *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F.Supp. 478, 482 (N.D.Ohio 1984) (citing *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Assoc., Inc.*, 554 F.2d 1213, 1215 (1st Cir. 1977)); *see also Hampton Beach*, 1995 WL 803576, *5.

Although the uncontroverted evidence contained in the summary judgment record demonstrates that Defendant, John Schepisi, is the majority shareholder of Anthony's and that he has a direct financial interest in Anthony's, (*see* Schepisi Cert. ¶ 1), Plaintiffs have failed to present the Court with any evidence that Mr. Schepisi has the right and ability to supervise the infringing activity. For this reason, Plaintiffs' motion for summary judgment against Mr. Schepisi will be denied. Defendants' cross-motion for summary judgment will also be denied.

### E. *Remedies*

Having granted summary judgment as to liability in favor of Plaintiffs and against Defendant, Anthony's, the Court must now determine what, if any, relief Plaintiffs should be granted. Plaintiffs move for an order of this Court permanently enjoining the Defendants from any further acts of infringement. Plaintiffs also request an award of statutory damages pursuant to 17 U.S.C. § 504(c)(1), and an award of costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505.

The Copyright Act empowers a court to grant injunctions in order "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The liability of Anthony's for continued copyright infringement having been established, Anthony's will be enjoined from hosting any further public performances of any BMI-licensed songs.[5]

Plaintiffs also seek an award of statutory damages in the amount of $1000 for each of the nine acts of copyright infringement which occurred prior to the filing of their original complaint, and in the amount of $5000 for each of the eighteen acts of infringement which they allege were wilful because those acts occurred after the filing of their original complaint and are included in the amended complaint.[6]

■ In lieu of an award representing actual damages, the Copyright Act permits a plaintiff to seek an award of statutory damages "in a sum of not less than $500 or more than $20,000" per infringement. 17 U.S.C. § 504(c)(1); *Nimmer*, § 14.04, at 14–48 to 14–60. Within the range set by section 504(c)(1), "the court has discretion in granting an award of damages to a plaintiff." *WPBK, Inc.*, 922 F.Supp. at 806. However, where a plaintiff establishes "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,-000." 17 U.S.C. § 504(c)(2).

Whether to award statutory damages in the high or low end of the range depends largely upon whether a defendant's infringement was "wilful, knowing, or merely innocent." *WPBK, Inc.*, 922 F.Supp. at 807 (citing *Boz Scaggs*, 491 F.Supp. at 914). In light of the parties' conflicting contentions regarding this issue, I find that there is a genuine issue of material fact regarding whether the infringements were wilful, knowing or merely innocent, thus precluding the entry of summary judgment in favor of Plaintiff with regard to statutory damages. Therefore, Plaintiff's motion for summary judgment will be denied as to damages.

---

**5.** Defendants will not be enjoined from continuing to receive and broadcast the Digital Music Service pursuant to the Sub-licensing Agreement with Digital.

This injunction will not preclude Anthony's from hosting public performances of the BMI-licensed works upon obtaining a proper license from BMI to do so.

**6.** *See* note 2, *supra*.

Accordingly, this Court must conduct an evidentiary hearing in order to determine the appropriate damage award, unless the parties can agree on an amount. *See WPBK, Inc.*, 922 F.Supp. at 807 (although court awarded plaintiff summary judgment as to liability on trademark infringement claim, it found that unless parties could agree on appropriate amount of damages, a hearing must be held). In addition, because Plaintiffs' entitlement to attorney's fees under 17 U.S.C. § 505 also depends largely upon whether the infringement was wilful, knowing, or innocent, *see, e.g., Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir.1991); *Dean v. Burrows*, 732 F.Supp. 816 (E.D.Tenn.1989), summary judgment in favor of Plaintiffs with regard to attorney's fees and costs will also be denied. *See Nimmer*, § 14.10, at 14–137 to 14–141.

This Court will enter an appropriate order.

This matter having come before the Court on the cross-motions of Plaintiffs and Defendants for summary judgment pursuant to Fed.R.Civ.P. 56, Lindsey H. Taylor, Esq., of Friedman Siegelbaum, appearing on behalf of Plaintiffs, and Denise J. Waltuch, Esq., of Schepisi & McLaughlin, P.A., appearing on behalf of Defendants; and,

The Court having considered the written submissions of the parties, including the briefs, affidavits and declarations filed in support of, and in opposition to the parties' cross-motions;

For the reasons set forth in the Court's Opinion filed concurrently with this Order;

IT IS HEREBY ORDERED on this 22nd day of October, 1996, that Plaintiffs' motion for summary judgment against Defendant, 84–88 Broadway, Inc. d/b/a J.P. Anthony's, is GRANTED as to liability and injunctive relief and DENIED as to damages, attorney's fees and costs; and,

IT IS FURTHER ORDERED that Defendant, 84–88 Broadway, Inc. d/b/a J.P. Anthony's, is permanently enjoined from hosting the public performance of any compositions licensed or copyrighted by the Plaintiffs; and,

IT IS FURTHER ORDERED that Plaintiffs' motion for summary judgment against Defendant, John A. Schepisi, is denied; and,

IT IS FURTHER ORDERED that Defendants' motion for summary judgment against Plaintiffs is denied.