PLAYBOY ENTERPRISES,
INC., Plaintiff,

v.

WEBBWORLD, INC., d/b/a NEP-
TICS.COM, Bentley Ives, James Gurkin,
and Benjamin Ellis, Defendants.

No. 3–96–CV–3222–DES.

United States District Court,
N.D. Texas,
Dallas Division.

June 27, 1997.

David L. Hitchcock, Sidley & Austin, Dallas, TX, John D. Vandenberg, Douglas D Hancock, Scott d. Eads, Klarquist Sparkman Campbell Leigh & Whinston, Portland, OR, for plaintiff.

Lawrence Brown, Law Office of Lawrence Brown, Fort Worth, TX, Denis L. Toothe, Fort Worth, TX, for defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge, Sitting by Designation.

This matter is before the court on plaintiff's Motions for Partial Summary Judgment (Docs. 47 and 65) and Motion to Hold Defendant Webbworld, Inc. ("Webbworld") in Contempt of Temporary Restraining Order (Doc.

31). This case arises out of plaintiff's claim of copyright infringement in violation of 17 U.S.C. § 106 et seq. For the reasons set forth below, plaintiff's Motions for Partial Summary Judgment are granted and plaintiff's Motion to Hold Defendant Webbworld in Contempt of Temporary Restraining Order is denied.

## I. BACKGROUND

The Internet, often referred to as the "Information Superhighway," consists of information transmitted from computer to computer via telephone lines. Internet Access Providers ("IAP"s), such as America Online and Netcom, enable computer users to access the Information Superhighway by providing the necessary electronic "on-ramps." Once a computer user has gained access to the Internet through an IAP, that user may "visit" one of the many specific "locations" on the Internet called "websites." Many thousands of commercial and non-commercial computer users operate websites to exchange information or to advertise goods and services to potential customers. To connect with a website, an Internet user, who has already gained access to the Internet through an IAP, simply types the website's Internet address on the user's keyboard.

Webbworld operates an Internet website called Neptics, Inc. ("Neptics"). The Neptics website makes adult images available to any Internet user who chooses to access the website. However, before being allowed to view Neptics' images, the Internet user must first pay Webbworld's subscription fee of $11.95 per month, a transaction which can be completed "on-line" with a major credit card. Over a period of several months, images were available through the Neptics' website which were originally created by or for Playboy Enterprises Inc. ("Playboy"), and which previously appeared in one of Playboy's copyrighted magazines.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit: under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The movant need not negate the nonmovant's claim. Id. at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow

the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## III. DISCUSSION

### A. Copyright Infringement

The Copyright Act of 1976 ("Copyright Act") provides that an owner of a copyrighted work has the exclusive right to reproduce the work in copies, to prepare derivative works based on the copyrighted work, to distribute copies of the work to the public, and, in the case of certain types of works, to perform and display the work publicly. 17 U.S.C. § 106. It also provides that "[a]nyone who Violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright." 17 U.S.C. § 501(a).

■ To establish a prima facie case of copyright infringement, the plaintiff must prove "ownership" of copyrighted material and "copying" by the defendant. *Norma Ribbon & Trimming, Inc.* v. Little, 51 F.3d 45, 47 (5th Cir.1995) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir.1991)). Infringement occurs when a defendant violates one of the exclusive rights of the copyright holder. 17 U.S.C. § 501(a). These rights include the right to reproduce the copyrighted work, the right to prepare derivative works, the right to distribute copies to the public, and the right to publicly display the work. 17 U.S.C. §§ 106(1)–(3) & (5). The copyright owner need not prove knowledge or intent on the part of the defendant to establish liability for direct copyright infringement. 17 U.S.C. § 504(c). *See, e.g., Playboy Enterprises, Inc. v. Frena*, 839 F.Supp. 1552, 1559 (M.D.Fla.1993) ("Intent or knowledge is not an element of infringement. ...").

■ A plaintiff establishes "ownership" by demonstrating that the material is "copyrightable" and that he complied with the statutory requirements in securing the copyright. *Central Point Software, Inc. v. Nugent*, 903 F.Supp. 1057, 1059 (E.D.Tex.1995). In this case, plaintiff has provided the court with copies of the Certificates of Copyright Registration establishing that Playboy is the owner of the copyright for each of the magazines from which the Neptics' images were copied. These copyright registrations are *prima facie* evidence of the validity of the copyrights and the information contained in the certificates. 17 U.S.C. § 410(c); *Central Point Software, Inc. v. Nugent*, 903 F.Supp. at 1059. Defendants present no evidence tending to disprove the validity of any of the certificates of registration, or of any of the information cited therein. Accordingly, the court finds that Playboy has properly established its ownership of the copyrighted images at issue.

■ Copying is generally established by showing the defendant had access to the copyrighted material and that there is a substantial similarity between the two works. *Norma Ribbon*, 51 F.3d at 47 (citing *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810–11 (5th Cir.1989)). A plaintiff can also establish copying, without a showing of access, by showing that "the two works are so strikingly similar as to preclude the possibility of independent creation." *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 113 (5th Cir.1978). Here, plaintiffs establish the copying requirement by providing the court with the affidavit of Mr. Gene Snyder. Mr. Snyder, who is employed by Playboy as its Electronic Infringement Research Assistant, subscribed to defendants' website. His affidavit and accompanying exhibits demonstrate that the images in issue were stored in defendants' "web server" computers and available for downloading by subscribers. The images retrieved by Mr. Snyder from the Neptic's website are virtually identical to those images which previously appeared in one of Playboy's copyrighted magazines. Defendants, however, object to consideration by the court of the material

presented in Mr. Snyder's affidavit ("Affidavit"). Defendants contend that the Affidavit fails to comply with Fed.R.Civ.P. 59(e) because Mr. Snyder lacked personal knowledge and his statements were conclusory. The court is not convinced by this argument and finds that plaintiff has established *a prima facie* case of copyright infringement.

■ The court will next examine, in light of the standard for summary judgment, whether defendants can establish any defenses to plaintiff's *prima facie* case of copyright infringement. Defendants first argue that this case falls within the scope of *Religious Technology Center v. Netcom On–Line Communication Services, Inc.,* 907 F.Supp. 1361 (N.D.Cal.1995) (referred to hereafter as "RTC") RTC involved a claim for direct copyright infringement against Netcom On–Line Communications Services ("Netcom"), one of the largest laps in the United States. Id. at 1366. Netcom was sued because it provided Internet access to a private Bulletin Board Service ("BBS") to which infringing material was being posted. *Id.* at 1365–68. The court found that Netcom was not liable for direct infringement because "Netcom does not create or control the content of the information available to its subscribers; it merely provides *access* to the Internet, whose content is controlled by no single entity." *Id.* at 1372 (emphasis in original).

This court finds that defendants' reliance on RTC is misplaced. As plaintiff points out, a Neptics' subscriber, unlike a Netcom customer, cannot gain access to the Internet using Neptics. The Neptics' subscriber must first get onto the Internet using a separate IAP, such as Netcom. Only after gaining access to the Internet can the subscriber connect with the *Neptics'* website. Where Netcom gets paid for providing Internet access for its customers, Neptics gets paid for selling the images it stores on its computers. Defendants argue that Neptics, like Netcom, it is nothing more than an information conduit. Defendants provide no evidence, however, to support this theory other than an implied similarity arising out of its discussion of the RTC case. Indeed, the deposition testimony of Webbworld's Systems Manager, Mr. Brian Ellis, makes it clear that Neptics'

function is not to provide Internet access, but rather to provide its subscribers with adult images which are contained in the storage devices of its computers.

■ Webbworld also argues that it cannot be held liable for copyright infringement because it has no control over the persons who are posting the infringing images to the adult newsgroups from which Neptics obtains its material. While this may be true, Neptics surely has control over the images it chooses to sell on the Neptics' website. Even the absence of the ability to exercise such control, however, is no defense to liability. If a business cannot be operated within the bounds of the Copyright Act, then perhaps the question of its legitimate existence needs to be addressed.

■ Finally, defendants attempt to avoid summary judgment by claiming that Playboy's "rabbit head" design was added to some of the infringing images after they were downloaded from the Neptics' website. Plaintiff points out that, a copyrighted image is infringed when it is reproduced without permission, whether or not it appears in association with a trademark or other identifying mark. *See* 17 U.S.C. § 106. Nevertheless, defendants do provide evidence, in the form of Mr. Ellis' deposition testimony, that Playboy's "rabbit head" design was added to some of the infringing images after they had been retrieved from the Neptics' website. In light of this factual dispute, it would be improper for the court to grant plaintiff's summary judgment motion with respect to those images affected by defendants' claim of tampering. However, this factual dispute only affects sixteen of the seventy-eight copyrighted images at issue. This is because only sixteen of the seventy-eight asserted copyrights depend on plaintiff's "rabbit head" design to identify Playboy as the source of Neptics' infringing copies. Defendants' infringements of the remaining sixty-two copyright registrations include unauthorized copies of Playboy's magazine covers or photographs which bear one of Playboy's trademarks.

### B. Statutory Damages

Plaintiff has elected, under 17 U.S.C. § 504(c), to recover statutory damages. Statutory damages provide for a sum of not less than $500 or more than $20,000 as the court deems just to be awarded to the copyright owner. The court may exercise its discretion and award up to $100,000 for willful infringement. 17 U.S.C. § 504(c)(2). The Fifth Circuit has defined willful infringement as infringement wherein a defendant: "knows his actions constitute an infringement. . . ." *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir.1988). The statute invests the trial court with wide discretion to set damages within the statutory limits. *Broadcast Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 487–89 (7th Cir.1995) (citing *Douglas v. Cunningham*, 294 U.S. 207, 210, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935)). Among the factors a court may consider in setting statutory damage amounts are: the expenses saved and profits reaped by the infringer, the deterrent effect of the award on defendant and on third parties, and the infringer's state of mind in committing the infringement. *See, e.g., Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1011 (9th Cir.1994), *cert. denied*, 515 U.S. 1107, 115 S.Ct. 2256, 132 L.Ed.2d 263 (1995).

In the present case, plaintiff seeks $20,000 per infringement. Plaintiff suggests that it need not prove that Webbworld's infringements were willful to collect statutory damages in the non-willful range of $500 to $20,000. Plaintiff also suggests that the presence of evidence of willful infringement justifies an award at the high end of the non-willful range. As evidence of defendants' willful infringement, plaintiff asserts that Webbworld continued to copy Playboy images after entry of a temporary restraining order and preliminary injunction, after notice by Playboy that many of its infringing images were contained in its "Centerfolds" directory, and after its own attorney recognized that Neptics displayed images copyrighted by Playboy. The defendants offer no controverting affidavits or any other summary judgment evidence on the issue of a just amount of statutory damages.

The court agrees that if Playboy sustains its burden of establishing willfulness on the part of defendants, the court may exercise its discretion and *award* up to $100,000 per infringement under the appropriate circumstances. The court is not persuaded, however, that evidence of willful infringement, without more, automatically justifies an award at the high end of the non-willful range. Nevertheless, plaintiff has provided this court with sufficient summary judgment evidence to establish both the number of infringements and the amount of damages to award for each. The court finds that an award of $5000 per infringement is just in this case. Accordingly, the court finds that the plaintiff is entitled to summary judgment for $310,000 in statutory damages.

### C. Vicarious Copyright Infringement

Plaintiff also moves the court for summary judgment of vicarious copyright infringement against Webbworld's principal operators, Bentley Ives and Benjamin Brian Ellis. In *Swallow Turn v. Wilson*, 831 F.Supp. 575, 579 (E.D.Tex.1993), the court granted summary judgment finding the defendant vicariously liable for copyright infringement stating:

> All participants in copyright infringement are jointly and severally liable as tortfeasors. (Citations omitted). If a defendant has a direct financial interest in the infringing activity and has the right and ability to supervise the activity which causes the infringement, then he should be held vicariously liable. (Citations omitted).

Whether a defendant has the required supervisory authority and financial interest are issue of law to be decided by the court. *Realsongs v. Gulf Broadcasting Corp.*, 824 F.Supp. 89, 91 (M.D.La.1993). Intent or knowledge of the infringement is not an element of the claim for vicarious copyright infringement. *Peer Intern. Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 565 (S.D.N.Y. 1995).

The evidence shows that Mr. Ives is Webbworld's sole officer, director, and shareholder. He also handles most of its business, financial, and legal matters. Mr. Ellis con-

ceived the business idea for the Neptics' website, created the "Scan News" software program, and ran Neptics' day-to-day operations. Plaintiff suggests these undisputed facts establish that Messrs. Ives and Ellis had the required supervisory authority over the infringing activity. Defendants contend otherwise. Although they do not deny that Messrs. Ives and Ellis had control over the operation of the Neptics' website, they maintain that the evidence fails to establish that Messrs. Ives and Ellis had the *right* and ability to supervise the conduct of those who initially posted Playboy's copyrighted images to the Internet.

Defendants' argument seems to miss the point. That defendants had no control over those responsible for originally uploading the infringing images onto the Internet is not relevant to the issue of defendants' control over their infringing activity. The only relevant question regarding the element of control is whether defendants had the right and ability to control what occurred on the Neptics' website. The court finds that they did. Defendants' arguments to the contrary, including their contention that they lacked control because the process was automated, are unavailing.

■ The evidence also shows that Mr. Ives' share of Neptics' income was twenty-five percent and Mr. Ellis's share was fifty percent. Plaintiff asserts this establishes that Messrs. Ives and Ellis had a direct financial interest in the infringing activity. Defendants object, denying they received any direct financial benefit from the infringing activity because Neptics' charges its customers a fixed fee of $11.95 per month, rather than charging per image viewed or downloaded. In support of their argument, defendants rely on the district court decision in *Fonovisa, Inc. v. Cherry Auction, Inc.,* 847 F.Supp. 1492 (E.D. Cal.1994). In *Fonovisa*, the district court found that the operator of a swap meet was not vicariously liable for the infringing sales of vendors to whom it rented booth space. The *Fonovisa* court reasoned that the swap meet operator received no separate financial benefit directly linked to the infringing sales because the operator charged a fixed booth rental fee to its vendors and a fixed admission price to the swap meet's customers. 847 F.Supp. at 1497.

Defendants' reliance on the district court's decision in *Fonovisa* is unavailing. On appeal, the Ninth Circuit disagreed and reversed the district court. The Ninth Circuit found that the district court had applied the wrong standard in requiring a direct tie between the vicarious infringer's financial benefit and the infringing activity. *Fonovisa,* 76 F.3d 259, 263 (9th Cir.1996). Instead, the Ninth Circuit found it sufficient that the infringing materials likely enhanced the swap meet for its customers. Id. The Ninth Circuit's reasoning applies as well to this case, in which plaintiff's photographs enhanced the attractiveness of the Neptics' website to potential customers. Accordingly, the court finds that the financial interest of Messrs. Ives and Ellis in Neptics' infringing activity was sufficiently direct to support plaintiff's vicarious infringement claim.

### D. Attorney's Fees

■ Plaintiff further requests the court to award attorney's fees. 17 U.S.C. § 505 permits a court to award attorney's fees to the party prevailing in a copyright claim. Thus, attorney's fees may be awarded to a prevailing party as a matter of the court's discretion. *Fogerty v. Fantasy,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). However, attorney's fees "are the rule rather than the exception and should be awarded routinely." *Micromanipulator Co. v. Bough,* 779 F.2d 255, 259 (5th Cir.1985); *Meadowgreen Music Co. v. Voice in the Wilderness Broadcasting, Inc.,* 789 F.Supp. 823, 828 (E.D.Tex.1992). Considering the facts surrounding this case, the court is of the opinion that reasonable attorney's fees are justified.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Motions for Partial summary Judgment (Docs. 47 and 65) are granted to the extent that defendants Webbworld, Ives, and Ellis shall be jointly and severally liable to plaintiff in the amount of $310,000, pursuant to 17 U.S.C. § 504, for copyright infringement of sixty-two of Play-

boy's magazine covers and photographs bearing one of Playboy's trademarks.

**IT IS FURTHER ORDERED** that counsel shall confer regarding reasonable attorney's fees and submit the appropriate documents for the court's review.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Hold Defendant Webbworld in Contempt of Temporary Restraining Order (Doc. 31) is denied.